```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
PATRICK, et al.,                         :
                Plaintiffs,              :    25cv5053 (DLC)
                                         :
           -v-                           :    OPINION AND
                                         :        ORDER
FOCUS FINANCIAL PARTNERS, LLC, et al.    :
                                         :
                Defendants.              :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiffs James T. Patrick and William DeButts:
Steven Hall
Baker Donelson, Bearman, Caldwell & Berkowitz, PC
3414 Peachtree Road
Monarch Tower, Suite 1500
Atlanta, GA 30326

Lauren Brophy Cooper
Robert Lufrano
Baker, Donelson, Bearman, Caldwell, & Berkowitz, PC
4365 Route 1 South, Suite 301
Princeton, NJ 08540

For plaintiff William DeButts:
Michael Stephen Mosscrop
Franklin Gringer & Cohen, P.C.
666 Old Country Road, Suite 202
Garden City, NY 11530

For defendants Focus Financial Partners, LLC, Edge Capital Group, LLC, and SCS Capital Management LLC:
Gavin J. Rooney
Lowenstein Sandler LLP
1251 Avenue of The Americas, 17th Floor
New York, NY 11020

DENISE COTE, District Judge:

James T. Patrick and William DeButts initiated this action on June 16, 2025 and moved on June 18 for a temporary restraining order and preliminary injunction. Also on June 18, the defendants Focus Financial Partners, LLC ("Focus"), Edge Capital Group, LLC ("Edge Capital") and SCS Capital Management LLC ("SCS") moved to compel arbitration and to stay the case pending resolution of that arbitration. At the June 20 hearing, the Court denied the plaintiffs' motion for a temporary restraining order. For the following reasons, the defendants' June 18 motion to compel arbitration and to stay the case is granted.

## Background

Plaintiffs are investment advisor representatives. Each owned equity in Edge Advisors, LLC ("Edge Advisors") which was a registered investment advisory firm. In 2018, the principals of Edge Advisors, including plaintiffs, agreed to sell the business to defendant Focus, which is a network of investment advisory firms. Focus formed a new, wholly-owned subsidiary, defendant Edge Capital, to acquire the assets of Edge Advisors.

The principals of Edge Advisors, including plaintiffs, became members of a newly formed entity, ECG Management Holdings, LLC (the "Management Company"), which, in turn, agreed

2

to manage the business of Edge Capital on an exclusive basis. This relationship is memorialized in an August 1, 2018 agreement entered into by the Management Company, Edge Capital, and the Management Company's principals, including plaintiffs ("Management Agreement").

The Management Agreement includes several sections governing client relationships, including § 2.10 (the "Confidentiality Covenant"), § 2.12 (the "Employee Solicitation and Hiring Covenant"), and § 2.13 (the "Non-Solicitation Covenants").  The Management Agreement states that it shall be governed by New York law.

Section 8.2 of the Management Agreement also includes a mandatory arbitration provision.  That provision explains that a party wishing to resolve a dispute that falls within the arbitration provision's purview must first provide written notice of the dispute and then must engage in a mediation.  If mediation fails, either party may initiate arbitration proceedings.

Beginning in late 2023, Focus restructured its network by combining many regional firms into larger, national hubs, and proposed "buy outs" of the management agreements governing its smaller firms.  The principals of the Management Company voted in favor of restructuring, and the buy out closed on February 1,

2025. Plaintiffs, however, chose to sell back their respective ownership interests to the Management Company.

The defendants assert that plaintiffs have misappropriated client lists that were the property of Focus and Edge Capital, solicited Edge Capital's clients to follow them to a competing investment advisory firm, and solicited at least one client service specialist from Edge Capital to work at the competing firm. The defendants contend that this conduct breached several of the Management Agreement's covenants.

Accordingly, pursuant to the Management Agreement, on May 15, 2025, the parties attended a mediation of their dispute. The mediation failed, and on May 29, Focus served Patrick and DeButts with notice of intent to arbitrate. On June 5, Focus commenced arbitration proceedings before the American Arbitration Association ("AAA"). Focus's Statement of Claim filed in the arbitration asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing, asserting that plaintiffs breached the Management Agreement's Confidentiality, Employee Solicitation and Hiring, and Non-Solicitation Covenants.

Plaintiffs initiated this action on June 16, 2025. The complaint alleges that the Management Agreement's restrictive covenants are unenforceable and, therefore, the claims that

4

Focus asserts in the arbitration must fail.  It seeks declaratory and injunctive relief in five counts.

On June 18, the plaintiffs moved for a temporary restraining order and preliminary injunction.  An Order of June 18 scheduled a hearing on the plaintiffs' motion for June 20.  That same day, the defendants filed a motion to compel arbitration and to stay the case pending resolution of that arbitration.  At the June 20 hearing, the Court denied plaintiffs' motion for a temporary restraining order.  The defendants' June 18 motion to compel arbitration became fully submitted on July 10, 2025.

## Discussion

Section 2 of the Federal Arbitration Act ("FAA"), in relevant part, guarantees that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." Davitashvili v. Grubhub Inc., 131 F.4th 109, 114 (2d Cir. 2025) (citation omitted).  Accordingly, courts must "rigorously

enforce arbitration agreements according to their terms." Id. at 115 (citation omitted).

To determine whether parties agreed to arbitrate, courts apply a "standard similar to that applicable for a motion for summary judgment," considering "all relevant, admissible evidence submitted by the parties" and drawing "all reasonable inferences in favor of the non-moving party." Id. (citation omitted). In doing so, courts apply "ordinary state-law principles that govern the formation of contracts". Id. (citation omitted). This inquiry involves several steps, and at each step of the inquiry those "traditional contract principles apply." Coinbase, Inc. v. Suski, 602 U.S. 143, 149 (2024).

First, a court determines "whether an agreement to arbitrate between the parties exists." Davitashvili, 131 F.4th at 115. Second, a court inquires "whether questions of 'arbitrability'" -- in other words, questions of whether a particular dispute is subject to arbitration -- "are for the court or the arbitrator to decide." Id. The issue of arbitrability is presumptively to be resolved by a court, but parties may include a "delegation provision" delegating the question of arbitrability to the arbitrator. Id. at 117. Finally, where an arbitration agreement leaves intact a court's presumptive power to determine arbitrability, a court then

determines "whether the parties' arbitration agreement covers a particular claim." Id. at 119.  The FAA's scope is limited to "agreements to arbitrate controversies that 'arise out of' the parties' contractual relationship -- that is, controversies that were caused by the relationship." Id. (citation omitted).

Under New York law, the "primary objective" in interpreting a contract "is to give effect to the intent of the parties as revealed by the language of their agreement." In re Motors Liquidation Co., 943 F.3d 125, 131 (2d Cir. 2019) (citation omitted).  "The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." Id. (citation omitted).

As an initial matter, it is not disputed that New York law applies to this dispute and that an agreement to arbitrate exists among the parties.  The parties executed the Management Agreement in August 2018.  It includes a broad arbitration provision in § 8.2.  Section 8.2 provides, in relevant part:

> Other than a proceeding seeking a preliminary injunction, temporary restraining order or other equitable relief, disputes relating to termination of this Agreement and disputes over events leading to liquidated damages, which shall be governed by Section 8.3, <u>any claim, dispute or controversy arising out of or relating to the interpretation, application or enforcement of this Agreement</u>, any document or instrument delivered pursuant to or in connection with this Agreement, <u>or any breach of this Agreement</u> or any

7

> such document or instrument (an "Arbitrable Dispute")
> shall be resolved pursuant to this Section 8.2[.]

Section 8.2(a) provides a process for the mediation of an arbitrable dispute. Section 8.2(b) provides that any arbitral dispute not resolved by that mediation "shall be settled by arbitration to be held in New York, New York in accordance with the commercial arbitration rules then in effect of the AAA."

Second, no party has suggested that the Management Agreement reserves the power to decide questions of arbitrability for the arbitrator. Because there is no "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability, the Court retains the presumptive power to resolve that question. Suski, 602 U.S. at 149 (citation omitted).

Third and finally, the Management Agreement's arbitration provision encompasses all of the plaintiffs' claims. All of plaintiffs' causes of action arise out of and relate to the "interpretation, application or enforcement" of the Management Agreement. The first, second, and third causes of action each seek declaratory relief concerning the enforceability of restrictive covenants in §§ 2.10, 2.12, and 2.13. The fourth cause of action seeks an injunction against "enforcement" of the covenants, including by staying the ongoing arbitration. And the fifth and final cause of action seeks a declaration that the

8

plaintiffs' claims for declaratory and injunctive relief are not subject to the Management Agreement's arbitration provision. Thus, each of plaintiffs' claims challenge the enforceability of the covenants and are arbitrable.

The plaintiffs recognize that they are bound by the Management Agreement and that it contains a broad arbitration provision. They contend, however, that § 2.15 of the Management Agreement contains a carve out that permits them to litigate in court claims for equitable and declaratory relief and for liquidated damages arising from the restrictive covenants. Section 2.15 states:

> Although the Management Company and the Principals acknowledge and agree that the restrictions contained in Section 2.10 through Section 2.13 are fair and reasonable and a critical inducement to the entry by Focus and the Company into this Agreement, <u>if a final judicial determination is made by a court</u> of competent jurisdiction <u>that the time or territory or any other restriction</u> contained in such Section(s) <u>is unreasonable</u> or otherwise unenforceable, such Section(s) will not be rendered void, but will be deemed amended as to such specific restriction as such court may judicially determine or indicate to be reasonable or, if such court does not so determine or indicate, to the maximum extent that any applicable law or judicial order may provide to be a reasonable restriction under the circumstances.

(Emphasis supplied.) Plaintiffs contend that § 2.15 provides that the Court, not an arbitrator, must decide whether the restrictive covenants set forth in the Management Agreement are enforceable.

9

This misconstrues both § 2.15 and the Management Agreement. Pursuant to § 8.2, disputes relating to the interpretation and enforcement of the covenants must be resolved through arbitration. Section 2.15 does not negate that duty. When read in the context of the entire Management Agreement, and to give full force to each of its provisions, § 2.15 allows a restrictive covenant to be modified without rendering it void. That modification may occur through a "final judicial determination." Reading §§ 2.15 and 8.2 together, that judicial determination may occur when a party seeks to confirm or vacate an arbitration award. Any other view would gut § 8.2 and deprive the parties of the benefits of their agreement to arbitrate. If the parties had intended to remove disputes concerning enforcement of §§ 2.10 through 2.13 from the Arbitral Disputes defined in § 8.2, the Management Agreement would have made such a carveout explicit. For instance, § 8.2 explicitly carves out preliminary injunctions and disputes over events leading to liquidated damages from its agreement to arbitrate. There is no comparable carveout in the Management Agreement for the plaintiff's claims, which seek declaratory and injunctive relief that would thwart the ongoing arbitration and convert arbitrable claims into nonarbitrable ones.

## Conclusion

The defendants' June 18, 2025 motion to compel arbitration is granted. The Clerk of Court is directed to stay the case.

Dated:   New York, New York
         August 19, 2025

_____
DENISE COTE
United States District Judge